FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUN 21 2018 ★
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x
POWER UP LENDING GROUP, LTD.,

    Plaintiff,

-against-

ALLIANCE BIOENERGY PLUS, INC., DANIEL DE LIEGE, BENJAMIN SLAGER, ANTHONY E. SANTELLI, AND DENNIS LENABURG,

    Defendants.
------------------------------------------------------------x

Civil Action No.:

CV-18 3601

FEUERSTEIN, J.

SHIELDS, M.J.

## COMPLAINT

Plaintiff, POWER UP LENDING GROUP, LTD. ("Power Up" or "Plaintiff"), files this Complaint and alleges the following:

### I. SUMMARY

1. Power Up brings this action for equitable relief and damages caused by violations of contract, intentional tort, and fraud, perpetrated by Alliance Bioenergy Plus, Inc. (the "Corporate Defendant"), Daniel De Liege ("De Liege"), Benjamin Slager ("Slager"), Anthony E. Santelli ("Santelli") and Dennis Lenaburg ("Lenaburg"), (collectively, jointly and severally, "the Defendants"). Through this action, Power Up seeks to recover losses caused by the Defendants' intentional and/or reckless misconduct, including compensatory and restitutionary damages, which losses can only be avoided if the equitable relief and injunctive relief described herein below is granted.

2. That at all relevant times, De Liege was the Chairman, CFO, Treasurer and Secretary of the Corporate Defendant, Slager has been and remains the interim President and

CTO, Santelli has been and remains an officer and director, and Lenaburg has been and remains the Controller and Human Resources Manager, and all of the foregoing individuals (the "Individual Defendants") have been and remain in a conspiracy to defraud the Plaintiff and to deprive it of the funds that were taken by the Corporate Defendant under false pretenses.

3. That Power Up was an investor in the Corporate Defendant and was well-known to the Defendants. Power Up's business strategy at the time of the stock purchases and loans and issuance of notes at issue was to invest in publicly-traded, nano-cap companies whose securities are traded on the Over the Counter Bulletin Board, OTCQB and the "Pink Sheets." Nano-cap companies, such as the Corporate Defendant, are often capital-constrained, as their low market capitalization hinders their access to banks or investment firms. Power Up provides capital to such companies as an investment in return for shares purchased at a discount to market price.

4. That Power Up invested a total of $191,000 in the Corporate Defendant by purchasing securities directly from the Corporate Defendant and making loans thereto and has sustained damages of $286,500 exclusive of attorney's fees, pre-judgment interest, costs and late fees.

## II.     JURISDICTION AND VENUE

5. Defendants, directly and indirectly, singly or in concert, made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, or of the mails in connection with the acts, practices and courses of conduct alleged in this Complaint, certain of which occurred within the Eastern District of New York. That subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332 as there is complete diversity between the parties and there is more than $75,000 at issue. Thus, this Court has diversity jurisdiction. Jurisdiction and venue is properly laid in the Eastern District by reason of the foregoing and by contract.

6. Venue is proper in this Court because certain of the transactions, acts, practices, and courses of conduct constituting violations of duties occurred within this judicial district. Additionally, Power Up transacts business and maintains its principal place of business in this district. That further, the Corporate Defendant has contractually agreed with Power Up to fix jurisdiction venue for any action in the State of New York, County of Nassau, which is within the Eastern District and the jurisdiction of this Court. Thus, the Corporate Defendant has contractually agreed to fix jurisdiction and venue in this district. Additionally, the Individual Defendant are sufficiently closely related to the Corporate Defendant by reason of their offices and positions, their conspiracy to defraud with the Corporate Defendant, and their involvement in the intentional interference with the Plaintiff's contractual rights, so that they are bound by the contractual jurisdiction and venue provisions.

7. That in connection with the acts alleged in this Complaint, the Defendants directly or indirectly used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

### III. PARTIES

8. That at all times relevant herein, Power Up has been and remains a corporation organized and existing under the laws of the State of Virginia with an office for business in the State of New York, County of Nassau, not engaged in the banking business.

9. That at all times relevant herein, the Corporate Defendant has been and remains a corporation organized and existing under the laws of the State of Nevada, with an office for business in the State of Florida, County of Palm Beach.

10. That at all times relevant herein, De Liege has been and remains a resident of the State of Florida, County of Palm Beach.

11. That at all times relevant herein, Slager has been and remains a resident of the State of Florida, County of Palm Beach.

12. That at all times relevant herein, Lenaburg has been and remains a resident of the State of Indiana, County of Lake.

13. That at all times relevant herein, Santelli has been and remains a resident of the State of Ohio, County of Lake.

### IV.   FACTUAL ALLEGATIONS

14. That heretofore and from time to time, the Defendants have made material misrepresentations of fact to Power Up, knowing that such misrepresentations were false, and upon which Power Up relied and was damaged.

15. That as a result of these material misrepresentations, Power Up invested $191,000 in the Corporate Defendant and sustained damages thereby.

### AS AND FOR A FIRST CAUSE OF ACTION
### PROMISSORY NOTES DEFAULTS

16. Power Up repeats and realleges each and every allegation contained in paragraphs 1 through 15 of this Complaint with the same force and effect as if fully set forth at length herein.

17. That for several years prior to December 2017, the Corporate Defendant entered into a series of financial transactions with the Plaintiff, each of which was successfully completed, thereby lulling the Plaintiff into a false sense of security and making the Plaintiff believe that there was an ongoing bona fide relationship of trust and confidence between the Plaintiff and the Corporate Defendant.

18. That on or about December 18, 2017, the Corporate Defendant, as borrower, made, executed and delivered to Power Up a convertible promissory note ("the December Note") in the amount of $63,000, which Note was issued pursuant to a Securities Purchase Agreement ("the December Agreement") of even date, which provided for certain issuance of, and conversion rights in and to the common stock of the Corporate Defendant.

19. That the agreements between the parties provided that venue for any action between the parties would be the State of New York, County of Nassau pursuant to §4.6 of the December Note and §5 of the December Agreement.

20. That in the December Note, the Corporate Defendant: (i) granted Power Up the right to convert all or any part of the outstanding and unpaid principal amount and accrued interest of the Note into fully paid and non-assessable shares of common stock of the Corporate Defendant; and (ii) agreed that an Event of Default of the Note shall occur upon the failure of the Corporate Defendant to timely issue shares of common stock of the Corporate Defendant to Power Up upon receipt of a conversion notice delivered pursuant to the Note.

21. That on January 10, 2018 the Corporate Defendant made, executed and delivered a Convertible Promissory Note ("the January Note"), in the amount of $128,000 together with a Securities Purchase Agreement of even date ("the January Agreement") virtually identical in all respects to the December Note and Agreement and that likewise provided for the right of the Plaintiff to convert the debt evidenced by the January Note into common stock of the Corporate Defendant.

22. That pursuant to both Notes and Agreements, the Corporate Defendant made and delivered irrevocable letters of instruction which directed its then transfer agent, Interwest Transfer Company, Inc. to establish a share reserve for the benefit of the Plaintiff and to comply

seamlessly with the future conversion requests that would be received by the transfer agent from the Plaintiff as and when the Plaintiff decided to issue such conversion requests.

23. That the irrevocable letter of instruction is a material and fundamental part of the overall transaction since without such a letter the transfer agent will not be obligated to follow the instructions of the Plaintiff without the consent of the Corporate Defendant, such that the absence of such a letter gives the Corporate Defendant the power to prevent conversions and thwart the entire transaction. That additionally, the transfer agent letter establishes a share reserve for the sole benefit of Power Up, so that at the time when Power Up issues Notices of Conversion, there will be sufficient shares available to accommodate the conversion. That moreover, the existing letters of instruction and authorizations places upon the issuer the obligation to obtain from any replacement transfer agent a new transfer agent letter in the same form as the letter which was executed by the prior transfer agent, thereby obligating the replacement transfer agent to comply with the directions of the original transfer agent letter. The failure of the Corporate Defendant to fulfill its obligations and the actions of the Individual Defendants in switching transfer agents were intentional and deliberate acts taken for the sole purpose of reaching the contractual obligations of the Corporate Defendant and frustrating and impeding the Plaintiff's rights.

24. That the Notes and Agreements likewise provide that the Corporate Defendant may not change or switch transfer agents without the consent of the Plaintiff and without providing substitute irrevocable letters of instruction to the new transfer agent so that it is bound to follow the Plaintiff's instructions in the same manner as the Corporate Defendant's original transfer agent.

25. That in addition, Article 3 of the Notes provides among other things that the Corporate Defendant will be in default if it announces or threatens that it will not honor its obligations to issue shares of stock to the Plaintiff according to the Notes and Securities Purchase Agreements.

26. That the Corporate Defendant has willfully and unlawfully taken the following steps in June 2018 each of which is a material, separate and distinct default under the Notes and Agreements. First, the Corporate Defendant has unilaterally and without the consent of the Plaintiff switched transfer agents to a new agent that it knows will not follow the instructions of the Plaintiff. Second, the Corporate Defendant has willfully and purposefully refused to provide an alternate letter of instruction to the Plaintiff or to the successor transfer agent, thus violating the Notes and Agreements and the existing transfer agent letter. Third, the Corporate Defendant has advised the Plaintiff in no uncertain terms that it does not believe itself to be bound by the Notes and Agreements, that it has no intention of honoring them or of complying with future conversion requests, and that it is of the opinion that the Notes and Agreements are illegal and unenforceable and that therefore need to be "renegotiated" or alternatively not honor or complied with at all. These actions were undertaken both by the Corporate Defendant and by the Individual Defendants, which actions were beyond the scope of their duties and status as officers or directors of the Corporate Defendant, and within an ongoing conspiracy between and among them for their own personal benefit in violation of their fiduciary obligations to the Plaintiff.

27. That by virtue of the foregoing, the Corporate Defendant is in default under the December Note and December Agreement and the January Note and January Agreement and no such defaults have been cured.

7

28. That the Corporate Defendant has not cured these defaults thereby causing damages to Power Up in an amount to be determined by the Court but not less than an amount equal to $286,500 ($191,000 X 150%) together with applicable interest thereon. These additional damages arise from the fact that the Notes expressly provide that in the event of an uncured default, the obligor will be responsible for payment of 150% of the amount of the principal balance then due as liquidated damages and not as a penalty.

29. That moreover, pursuant to Section 1.4(g) of both Notes, the Corporate Defendant acknowledged that the liquidated damages provision contained in Section 1.4(g) is justified as damages resulting from a failure, attempt to frustrate, interference with the conversion rights are difficult if not impossible to qualify, and that the default amount was reasonable under the circumstances.

30. That the Corporate Defendant's actions have caused damages to Power Up in an amount to be determined by the Court but not less than an amount equal to $286,500 together with applicable interest thereon. That a true copy of a Notice of Default that was served upon the Corporate Defendant is annexed hereto and incorporated herein by reference as Exhibit "A". Thus, the Corporate Defendant is in default and Power Up is entitled to and demands judgment in the sum of $286,500 plus interest and late fees.

**AS AND FOR A SECOND CAUSE OF ACTION
BREACH OF CONTRACT – LOST PROFITS**

31. Power Up repeats and realleges each and every allegation contained in paragraphs 1 through 30 of this Complaint with the same force and effect as if fully set forth at length herein.

32. That as a direct result of the defaults of the Defendants and their failure to abide by their contractual obligations, Power Up has been deprived of, and continues to be deprived of,

8

the opportunity to acquire and to sell the common stock of the Corporate Defendant at a profit, which profits have been irretrievably lost as the markets for the common stock can no longer be recreated.

33. That by reason of the foregoing, Power Up is entitled to judgment in an amount to be determined by the Court and equal to the lost profits that Power Up would have realized had the stock been made available and delivered to Power Up in accordance with its Conversion Notices.

## AS AND FOR A THIRD CAUSE OF ACTION
## BREACH OF CONTRACT – LITIGATION EXPENSES

34. Power Up repeats and realleges each and every allegation contained in paragraphs 1 through 33 of this Complaint with the same force and effect as if fully set forth at length herein.

35. That the Notes and Agreements provide that in the event of a dispute and/or litigation between the parties, the prevailing parties shall be entitled to recover all of its litigation expenses including reasonable attorney fees.

36. That by reason of the foregoing, Power Up is entitled to a judgment against Defendants for the reasonable legal fees and litigation expenses paid or incurred in this action.

## AS AND FOR A FOURTH CAUSE OF ACTION – INJUNCTIVE
## AND EQUITABLE RELIEF

37. Power Up repeats and realleges each and every allegation contained in paragraphs 1 through 36 of this Complaint with the same force and effect as if fully set forth at length herein.

38. That the total amount due to Power Up is $286,500 exclusive of any additional liquidated damages, consequential damages, default interest, statutory prejudgment interest, legal fees, court costs and litigation expenses.

39. That while Power Up is clearly entitled to a money judgment, the Corporate Defendant is clearly incapable of satisfying any such judgment obtained.

40. That in its most recent filing required under the Federal Securities Laws, the Corporate Defendant concedes that it has total assets that are exceeded by its total liabilities thus rendering it insolvent.

41. That the Corporate Defendant also represents therein that for that period it had a net loss and that at the end of the period, it had insufficient cash to meet its obligations, thus rendering it insolvent.

42. That the only viable avenue available to Power Up to obtain repayment of the outstanding Notes is by exercising its conversion rights and thereby obtaining unrestricted shares of stock in the Corporate Defendant and selling those shares on the open market.

43. That at present there is an active market for the Corporate Defendant's stock which continues to trade in significant volume.

44. That so long as that activity continues and assuming that Power Up's conversion rights are not frustrated or impeded, Power Up will be able to obtain the unrestricted shares, sell them in the market place, and recover the outstanding principal indebtedness owed to it as well as anticipated profits.

45. That the market for the shares of stock in the Corporate Defendant is extremely volatile, such that there can be no assurance that the current level of activity will continue to be sustained.

46. That if as and when such trading subsides or is curtailed, any shares obtained by Power Up at that time no longer be saleable thereby preventing Power Up from recovering the indebtedness due it, thereby leading to irreparable harm based on unrecoverable judgments.

47. That time is of the essence, and to prevent Power Up from suffering such irreparable harm, Power Up must immediately be permitted to exercise its conversion rights, and the Defendants must be immediately directed to cooperate with the same and to deliver the shares of stock at issue.

48. That because of the nature, condition, and value of the stock which Power Up seeks to acquire in this action is unique to it under the facts and circumstances presented, and because Power Up will suffer and sustain irreparable damage that cannot be recovered through a money judgment against the Defendants, Power Up has no adequate remedy at law and is entitled to equitable relief.

49. That by virtue of the foregoing, Power Up is entitled to and demands a judgment directing the Defendants and its agents, servants and employees including its current transfer agent, to execute and deliver all documents necessary to complete the conversion process and to deliver the stock sought by Power Up and to which it is contractually entitled in the form of a mandatory injunction.

### AS AND FOR AN FIFTH CAUSE OF ACTION
### INTENTIONAL INTERFERENCE WITH CONTRACT

50. Power Up repeats and realleges each and every allegation contained in paragraphs 1 through 49 of this Complaint with the same force and effect as if fully set forth at length herein.

51. That the Individual Defendants were fully aware at all times of the existence and the valid and binding nature of the contracts and agreements between Power Up and the Corporate Defendant.

52. That the Individual Defendants intentionally and with malice aforethought caused the Corporate Defendant to breach its contractual agreements with Power Up, and to repudiate in advance those contracts and its obligations thereunder, without any legal or factual justification based upon the breaches and defaults contained herein above.

53. That the Individual Defendants caused these breaches and defaults to take place for their own personal benefit and to maintain a higher stock price and stock value for their own holdings, and for their own financial benefit, and not for the benefit of the Corporate Defendant.

54. That indeed in June 2018, there was a change in management of the Corporate Defendant whereby De Liege withdrew as an officer and the other Individual Defendants took over control and management of the Corporate Defendant, which they did with the full knowledge of the existence and terms of the Notes and Agreements.

55. That the Individual Defendants, including De Liege, thus collectively, purposefully and in an ongoing conspiracy created a scheme and artifice by which they could provide the Plaintiff of the funds advanced to the Corporate Defendant and the benefits of the Notes and Agreements that the Corporate Defendant had entered into.

56. That the Individual Defendants acting collectively and in furtherance of their conspiracy falsely informed the Plaintiff and attempted to cause the Plaintiff to believe that the Notes and Agreements were illegal and usurious and could not be enforced, thereby attempting to make the Plaintiff to forego its contractual rights by threats, intimidation and economic duress.

57. That in truth and in fact, the Notes and Agreements are not subject to any usury laws, as they are not loans or forbearances, (Adar Bays, LLC v. Aim Exploration, Inc., 285 F. Supp. 3d 698 (S.D.N.Y. 2018)) such that the threats of the Individual Defendants constitute a bad faith, intentional interference with contract, so that the Individual Defendants must be answerable in damages.

59. That as a result, the Individual Defendants are liable to Power Up under the theory of intentional interference with contract, as the contracts at issue were in fact breached, thereby causing damages to Power Up of at least $286,500.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

(i) For $286,500 on the First Cause of Action;

(ii) For $286,500 on the Second Cause of Action;

(iii) Awarding Plaintiff its reasonable legal fees and costs of litigation on the Third Cause of Action;

(iv) For a temporary restraining order and a preliminary and permanent injunction against the Defendants directing that said Defendants and their agents, servants and employees immediately take all steps necessary and proper to permit the conversion of debt to stock and to deliver the stock at issue as described above on the Fourth Cause of Action;

(v) For an award of damages to be determined by the Court but no less than $286,500 on the Fifth Cause of Action; and

(viii) Together with the costs and disbursements of this action, interest at the rate of default as set forth in the Note; pre-judgment interest as provided by statute, and such other and further relief as the Court may deem just and proper.

Dated: Great Neck, New York
       June 20, 2018

                                        NAIDICH WURMAN LLP

By: _____
    Richard S. Naidich, Esq. (RSN 4102)
    111 Great Neck Road, Suite 214
    Great Neck, NY 11021
    Telephone: 516-498-2900
    Facsimile: 516-466-3555
    Attorneys for Plaintiff –
    POWER UP LENDING GROUP, LTD.

# NAIDICH WURMAN LLP
*Attorneys at Law*

RICHARD S. NAIDICH
KENNETH H. WURMAN

111 GREAT NECK ROAD, SUITE 214
GREAT NECK, NEW YORK 11021
TELEPHONE (516) 498-2900
FACSIMILE (516) 466-3555

BERNARD S. FELDMAN
ROBERT P. JOHNSON

OF COUNSEL

June 20, 2018

## NOTICE OF DEFAULT

*VIA E-MAIL: ben.slager@alliancebioe.com*
Alliance Bioenergy Plus, Inc.
400 N. Congress Avenue, Suite 130
West Palm Beach, FL 33401

Attention: Benjamin Slager, Interim President

RE: PowerUp Lending Group, Ltd. with Alliance Bioenergy Plus, Inc.

Dear Mr. Slager:

As you know, PowerUp Lending Group, Ltd. (the "Investor") made loan(s) to Alliance Bioenergy Plus, Inc. (the "Company") and the Company executed, among other things one or more Convertible Promissory Note(s) (the "Note(s)"). The Note(s) provide in pertinent part that the Company shall be in default if it replaces its Transfer Agent and fails to provide a fully executed Irrevocable Transfer Agent Instructions signed by the successor Transfer Agent and the Company, in a form as initially delivered pursuant to the Purchase Agreement(s). These Note(s) also contain cross-default provisions.

Based upon the foregoing, the Company is now in default under the Note(s). Demand is hereby made for the immediate payment as provided in the Note(s) a sum representing 150% of the remaining outstanding principal balances, together with Default Interest as provided for in the Note(s) (the "Default Amount"). Your failure to comply with the demand of this letter will result in the investor, exercising all rights under the Note(s). Additionally, should the Default Amount not be paid within five (5) business days from the date of this letter, in addition to all the other rights and remedies available to it, the Investor shall in its sole discretion convert the Default Amount into equity as provided for in the Note(s).

Very truly yours,

Bernard S. Feldman,
Of Counsel

BSF/amp
Cc: PowerUp Lending Group, Ltd.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK          Civil Action No.:

POWER UP LENDING GROUP, LTD.,

                              Plaintiff,

     -against-

ALLIANCE BIOENERGY PLUS, INC., DANIEL
DE LIEGE, BENJAMIN SLAGER, ANTHONY
E. SANTELLI, AND DENNIS LENABURG,

                              Defendants.

## SUMMONS AND COMPLAINT

**NAIDICH WURMAN LLP**
**ATTORNEYS FOR PLAINTIFF**
**111 GREAT NECK ROAD - SUITE 214**
**GREAT NECK, NEW YORK 11021**
**(516) 498-2900**

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.

DATED: June 20, 2018                    Signature: _____
                                        Print: Richard S. Naidich, Esq.

Service of a copy of the within                  is hereby admitted.
Dated:
                                                 _____
                                                 Attorney(s) for

PLEASE TAKE NOTICE

NOTICE         that the within is a (certified) true copy of an Order entered
OF ENTRY       in the office of the clerk of the within named Court on          , 20____.

NOTICE OF      that an Order of which the within is a true copy will be presented for
SETTLEMENT     settlement to the Hon.              , one of the judges of
               within named Court, at               on          , 20____ at
               a.m.

DATED: Great Neck, New York
       June 20, 2018                    NAIDICH WURMAN LLP
                                        Attorneys for Plaintiff
                                        111 Great Neck Road - Suite 214
                                        Great Neck, New York 11021
                                        (516) 498-2900