UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
POWER UP LENDING GROUP, LTD.,

**REPORT AND
RECOMMENDATION**
CV 18–3601 (JMA)(AYS)

Plaintiff,

-against-

ALLIANCE BIOENERGY PLUS, INC.,
DANIEL DE LIEGE, BENJAMIN
SLAGER, ANTHONY E. SANTELLI,
and DENNIS LENABURG,

Defendants.
--------------------------------------------------X

**SHIELDS, Magistrate Judge,**

Plaintiff Power Up Lending Group, Ltd. ("Power Up" or "Plaintiff") commenced this action on June 21, 2018, alleging breach of contract, fraud and intentional tort claims against former defendant Alliance Bioenergy Plus, Inc. ("Alliance") and current defendants Daniel De Liege, Benjamin Slager ("Slager"), Anthony E. Santelli ("Santelli") and Dennis Lenaburg ("Lenaburg") (the "Individual Defendants") (collectively "Defendants"). See Compl., Docket Entry ("DE") [1].

Presently before this Court, upon referral by the Honorable Joan M. Azrack for Report and Recommendation, see Order Referring Motion dated 5/25/2021, is the Individual Defendants'[1] motion to dismiss the Complaint pursuant to Rule 12(b)(2) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative to transfer venue pursuant to 28 U.S.C § 1440(a), and to amend the Individual Defendants' previously filed Answers and Affirmative

---

[1]. The Court notes that Individual Defendant Daniel De Liege does not join in the instant motion to dismiss.

Defenses pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.  DE [72].  For the reasons set forth below, this Court respectfully recommends that the motion be granted in part and denied in part. Specifically, this Court recommends that the motion to dismiss and the motion to transfer venue be denied, but that the Individual Defendants be granted leave to amend their previously filed Answers and Affirmative Defenses.

BACKGROUND

I.    Documents Considered

As is required in the context of this motion to dismiss, the factual allegations in the Complaint, though disputed by Defendants, are accepted to be true for purposes of these motions, and all reasonable inferences are drawn therefrom in favor of the Plaintiff.

While facts to consider in the context of a Rule 12 motion to dismiss are generally limited to those set forth in the pleadings, a court may consider matters outside of the pleadings under certain circumstances. Specifically, a court may consider: (1) documents attached to the Complaint as exhibits or incorporated by reference therein; (2) matters of which judicial notice may be taken; or (3) documents upon the terms and effects of which the Complaint "relies heavily" and which are, thus, rendered "integral" to the Complaint.  Chambers v. Time Warner, Inc., 282 F.3d 147, 152-153 (2d Cir. 2002); see Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995).  Moreover. "[a] court may take judicial notice of a documents filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (quoting Int'l Star Class Yacht Racing Ass'n Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998)).

The Court notes that Defendants have attached the Securities Purchase Agreements for each transaction, see DE [72-2], as well as the Notes for each transaction as exhibits to their brief. Id. Additionally, Defendants have attached Alliance's Chapter 11 Plan of Reorganization, Alliance's Disclosure Statement in Support of Debtor's Chapter 11 Plan of Reorganization, see DE [72-5], and the order confirming Alliance's Chapter 11 Plan of Reorganization. See DE [72-6]. Accordingly, because the documents are integral to the Complaint and judicial notice may be taken regarding Alliance's bankruptcy, the Court will consider them.

The Court turns now to discuss the facts set forth in Plaintiff's Complaint, construed in its favor.

II.    Facts

A.    The Parties

Power Up is a close corporation organized under the laws of the State of Virginia with its principal place of business in Nassau County, New York. Compl. ¶ 8. Power Up is engaged in the business of investing in small capitalization public companies. Id. ¶ 3. Alliance is one such nano-cap company. Id. Alliance is organized under the laws of the State of Nevada with a principal place of business in Palm Beach County. Florida. Id. ¶ 9.

The Individual Defendants are all officers or directors of Alliance, with De Liege and Slager residing in Florida, see Compl. ¶¶ 10-11, Lenaburg in Indiana, id. ¶ 12, and Santelli in Ohio. Id. ¶ 13.

B.    The Agreements

Plaintiff and Defendants engaged in two transactions which are the subject of the instant litigation. On December 18, 2017, in exchange for a Convertible Promissory Note ("the December Note") and Securities Purchase Agreement ("the December Agreement"), issued by

Alliance, Plaintiff loaned Alliance $63,000. Compl. ¶ 18. The December Agreement provided for certain issuance of, and conversion rights in and to the common stock of Alliance. Id. In the December Note Alliance: (i) granted Power Up the right to convert all or any part of the outstanding and unpaid principal amount and accrued interest of the Note into fully paid and non-assessable shares of common stock of Alliance; and (ii) agreed that an Event of Default of the Note shall occur upon the failure of the Alliance to timely issue shares of common stock of Alliance to Power Up upon receipt of a conversion notice delivered pursuant to the Note. Id. ¶ 20.

On January 10, 2018, the parties entered into the second transaction. Compl. ¶ 21. This transaction consisted of a $128,000 loan at an 8% interest rate. Id.; see also DE [72-2]. Like the first transaction, Alliance executed and delivered a Convertible Promissory Note ("the January Note") and Securities Purchase Agreement ("the January Agreement"). Compl. ¶ 21. The January Note and Agreement were virtually identical in all respects to the December Note and Agreement as they all provided for the right of the Plaintiff to convert the debt evidenced by the January Note into Alliance common stock. Id.

The Notes and Agreements provide that the sums would bear interest at 8% and were to be repaid to Power Up within nine months after the issuance date. See DE [72-2]. However, on their face, the Notes discuss a larger series of financial transactions. After a six-month holding period, Plaintiff had the right to convert all or part of the Notes from debt into Alliance common stock at a pre-set discount rate that was contractually agreed upon. Id. Power Up would then have the right to resell the stock on the open market at a potential profit. To the extent that the debt was converted into stock, such debt would be deemed satisfied, and Alliance would pay neither principal nor interest. Id.

Each Note contains a prepayment section. Alliance had the right to pre-pay the debt during the initial six-month holding period, thereby terminating the Plaintiff's rights of conversion. See DE [72-2]. However, if Alliance chose to prepay, it would be subject to a prepayment penalty. The Notes contain a prepayment penalties formula and a "prepayment percentages" chart with percentages ranging from 115% to 130%. Id.

As required by all of the agreements, Alliance made and delivered irrevocable letters of instruction which directed its transfer agent at the time, Interwest Transfer Company, Inc. to establish a share reserve for the benefit of Power Up and to comply with the future conversion requests that would be received by the transfer agent from Plaintiff as and when Power Up decided to issue such conversion requests. See Compl. ¶ 22. The Notes and Agreements also provide that Alliance may not change or switch transfer agents without Plaintiff's consent and without providing substitute irrevocable letters of instruction to the new transfer agent. Compl. ¶ 24. Article 3 of the Notes also provides for default if Alliance announces or threatens that it will not honor its obligations to issue shares of stock to the Plaintiff according to the agreements. Compl. ¶ 25. The Notes and Agreements were all executed on behalf of Alliance by Daniel De Liege as Chief Executive Officer. DE [72-2].

All of the agreements also contain a "Governing Law" clause. See Compl. ¶ 2. The clause provides that the Notes and Agreements "shall be governed by and construed in accordance with the laws of the State of Virginia without regard to principles of conflicts of laws." DE [72-2] at p. 12. The clause further provides that "any action brought by either party against the other concerning the transactions contemplated by this Agreement shall be brought only in the state courts of New York or in the federal courts located in the state and county of Nassau." Id.

C.     The Instant Action

In June 2018, Plaintiff alleges that Alliance changed transfer agents, refused to provide a replacement irrevocable letter of instruction, and also failed to maintain sufficient reserves of stock, all in breach of the agreements. Compl. ¶ 26. These alleged breaches constitute a default under the December and January Notes and Agreements. Plaintiff further alleges that the Individual Defendants intentionally interfered with the contracts, causing Alliance to breach the contracts. Plaintiff alleges that Alliance improperly changed transfer agents, and that the new transfer agent refused to enforce Plaintiff's letter of instructions to convert the promissory notes into shares of Alliance stock, thereby breaching the contracts. Compl. ¶¶ 1, 51-59.

On June 20, 2018, Plaintiff sent a demand letter and Notice of Default to Alliance which was met with no response. See Compl., Ex. A. This action was thereafter commenced on June 21, 2018.

III.    Procedural History

A.    Prior Motion to Dismiss

Following commencement of the instant litigation, On August 22, 2018, Alliance, Slager and Santelli moved to dismiss the action arguing that the transactions violated New York's criminal usury laws and thus were void ab initio. See DE [21]. In sum and substance, Defendants sought to rely upon the criminal usury law of New York State, and not those of the State of Virginia which they argued imposed no such laws. Id. They argued that New York law should govern because New York had the most substantial contacts with the Plaintiff and New York's criminal usury laws constituted a fundamental public policy. Id. Defendants contended that New York law applied to Plaintiff's claims notwithstanding the Virginia choice of law clauses. Id. In sum, they argued that Plaintiff's claims under New York law failed, because Defendants could assert a defense based upon New York's criminal usury laws. Id. On November 21, 2018, the

6

motion was referred to the undersigned for a Report and Recommendation. See Order Referring Motion dated 11/21/2018.

By Report and Recommendation dated February 28, 2019, the undersigned recommended that the motion to dismiss be denied and that the parties proceed to discovery. See DE [28]. The undersigned further recommended that while Florida was the state with the most substantial contacts for this litigation, the Virginia choice of law provision should apply, because the Plaintiff is incorporated in Virginia and the parties had entered into four separate signed agreements providing for the application of Virginia law. Id. By Order dated March 22, 2019, the Honorable Joan M. Azrack adopted the Report and Recommendation and denied the moving Defendants' request for an interlocutory appeal. DE [31]. On April 4, 2020, De Liege Slager and Santelli filed their answer.[2] DE [35].

B.     Alliance's Bankruptcy

On October 22, 2018, Alliance filed for bankruptcy. As a result Plaintiff did not pursue the instant action against Alliance. On September 17, 2019, Alliance's Chapter 11 Reorganization Plan was confirmed which resulted in the contracts at issue being discharged. See DE [72-6].

On April 8, 2020, the District Court issued an Order to Show Cause to Plaintiff as to why Alliance should not be dismissed from the action in light of the closing of the bankruptcy proceeding and Plaintiff's representations that it was no longer pursuing claims against Alliance in this action. See Order dated 4/08/2020. By Order dated May 18, 2020, the District Court

---

[2]. The Court notes that Defendant Lenaburg, who was appearing pro se at the time, filed an answer on July 30, 2018 and did not join in the previously filed motion to dismiss.  See DE [13].

dismissed Alliance from the action pursuant to Rule 21 of the Federal Rules of Civil Procedure. See Order dated 5/18/2020.

C.     Dispositive Motion Practice Requests and Discovery

Subsequent to the District Court's adoption of the undersigned's Report and Recommendation, defendants De Liege, Santelli and Slager moved the Court for a pre-motion conference seeking leave to file a summary judgment motion. DE [32]. Plaintiff opposed the request. DE [34].  Plaintiff further requested that the case proceed to discovery as recommended in the Report and Recommendation. See DE [36]. An initial conference was held on May 23, 2019, at which time the District Court held all motion practice in abeyance and directed that all discovery was to be completed by September 30, 2019. DE [39].

On June 12, 2019, defendants De Liege, Santelli and Slager requested a pre-motion conference seeking leave to file a motion to dismiss pursuant to Rule 12(b)(2) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. DE [40]. Plaintiff opposed the request. DE [41]. On July 8, 2019, the District Court denied the request stating that "[a]s ordered at the pre-motion conference on 5/23/2019 (during which the Individual Defendants made the same request for relief), the Court will not entertain any motions until the parties inform the Court that discovery is complete." Order dated 7/08/2019.

D.     Withdrawal of Defendants' Prior Counsel

On July 18, 2019, Defendants' prior counsel, Mark Basile, Esq., sought leave to withdraw as defendants' attorney. DE [42]. On August 6, 2019, the motion was granted and Mark Basile was relieved. Order dated 8/06/2019. Further, the case was stayed for 60 days to allow Defendants to obtain substitute counsel or decide to appear pro se. Id.

On November 22, 2019, Defendants' current counsel, Brian Middlebrook, Esq., entered a notice of appearance on behalf of defendants Lenaburg, Santelli and Slager. DE [47]. Following counsel's appearance, a new discovery schedule was entered on January 13, 2020. DE [50].

On February 3, 2020, Defendants filed a letter with the Court in effect seeking leave to move to dismiss the action once again. DE [53]. The February 3, 2020 letter is in effect the precursor to the instant motion, although a more formal pre-motion request was made by Defendants on June 12, 2020, DE [67], and granted on July 23, 2020. Order dated 7/23/2020.

The instant motion was filed on 8/24/2020[3], DE [72], and on May 25, 2021 the fully briefed motion was referred to this Court for a Report and Recommendation. Order Referring Motion dated 5/25/2021.

IV.    The Instant Motion

The Individual Defendants move to dismiss the Complaint for lack of personal jurisdiction. Defendants argue that this Court lacks personal jurisdiction over the Individual Defendants because the Complaint fails to allege an act or omission by the Individual Defendants that occurred in New York. Defendants aver that because Plaintiff's basis for jurisdiction over the Individual Defendants stemmed from the Contracts and the Individual Defendants close corporate relationship to Alliance, they no longer can assert personal jurisdiction over the Individual Defendants because Alliance is no longer a party to this action, nor did any of the Individual Defendants sign the contracts that were at issue with Plaintiff. Therefore, the Individual Defendants claim that any basis for personal jurisdiction that previously existed, has

---

[3]. Although the motion was originally filed on 8/24/2020, because the parties failed to comply with section IV.F of the District Court's Individual Rules, specifically that no motion papers shall be filed on ECF until the motion is fully briefed, the Court deemed the motion fully briefed as of October 23, 2020. Order dated 3/18/2021.

now been extinguished. Defendants next contend that the Complaint must also be dismissed for failure to state claim. Defendants argue that the Court must engage in a new choice of law analysis, because the contracts that contained the Virginia choice of law provision have now been discharged and are no longer valid. Thus, Defendants aver that when employing such an analysis, Florida law should be applied because that is the state with the most substantial contacts to this litigation. However, Defendants argue that whether Florida or New York is applied, Plaintiff's tortious interference claim fails. Finally, Defendants contend that discharge of the contracts by bankruptcy order necessitates dismissal. Defendants argue that by maintaining the instant action, Alliance is still burdened by a pre-petition claim and must bear the costs to represent the Individual Defendants which frustrates the purpose of the bankruptcy.

In the alternative, should the Court not dismiss the Complaint, Defendants seek a change of venue to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). Defendants also seek leave to amend their answer and affirmative defenses pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure.

Having summarized the relevant facts and basis for the motion, the Court turns to the merits thereof.

<u>DISCUSSION</u>

I.   <u>Personal Jurisdiction</u>

A review of the record reveals that there is no dispute that Plaintiff seeks jurisdiction over the Individual Defendants pursuant to the forum selection clause contained in the contracts. However, what is disputed is: 1) whether the forum selection clause is still enforceable even though the contracts have been extinguished through bankruptcy and 2) if the forum selection

clause is still valid is it enforceable against the Individual Defendants, even if they were not the actual signatories to the contracts.

While the Individual Defendants premise their argument on the assumption that the forum selection is no longer valid and that any personal jurisdiction must be determined by applying New York's long-statute, this Court believes that the Defendants are misguided in their assumption and that the forum selection is indeed still valid and binding upon the non-signatory Individual Defendants.

A.   The Forum Selection Clause is Mandatory

When presented with a valid forum selection clause, the Court analyzes jurisdictional and venue disputes utilizing such clauses because they represent the parties' agreement as to the most appropriate forum. Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 63, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013) (this "'represents the parties' agreement as to the most proper forum.'") (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 31, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)). Enforcing valid forum-selection clauses bargained for by the parties "protects their legitimate expectations and furthers vital interests of the justice system." Id. (citation omitted). Although the existence of a forum-selection clause does not end the analysis, a party "bears a heavy burden in overcoming a presumptively enforceable forum selection clause," and except in "the most unusual cases the interest of justice is served by holding parties to their bargain." Martinez v. Bloomberg LP, 740 F.3d 211, 219 (2d Cir. 2014) (internal citations and quotation marks omitted).

Courts analyzing a contractual forum selection clause must first ask: "(1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, *i.e.*, whether the parties are required to bring any dispute to the

designated forum or simply permitted to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause." Martinez v. Bloomberg LP, 740 F. 3d at 217 (internal citations and quotation marks omitted). If the forum selection clause at issue "was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable" and the presumption can only be overcome by "making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Id. (quoting Phillips v. Audio Active Ltd., 494 F.3d 378, 384 (2d Cir. 2007) (in turn, quoting M/S Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 15, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972))).

Forum selection clauses generally fall into two categories. A permissive forum selection clause confers jurisdiction in the designated forum, guaranteeing that there will be at least one available forum for any dispute, but does not bar a plaintiff from choosing another forum, "if jurisdiction there is otherwise appropriate." Phillips v. Audio Active Ltd., 494 F.3d at 386. By contrast, a mandatory forum selection clause requires disputes under the contract to be litigated in a particular forum. Id.

Where a presumptively valid mandatory forum selection clause exists, the *forum non conveniens* analysis is modified. The "usual tilt in favor of the plaintiff's choice of forum gives way to a presumption in favor of the contractually selected forum." Fasano v. Yu Yu, 921 F.3d at 335 (quoting Martinez v. Bloomberg LP, 740 F.3d at 218 (citing M/S Bremen v. Zapata Off–Shore Co., 407 U.S. at 12, 92 S. Ct. 1907)). In addition, in such a circumstance, a court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." Atl. Marine, 571 U.S. at 64, 134 S. Ct. 568.

At the outset the Court notes that the sole remaining claim at issue is one for intentional interference with contract. Otherwise stated, Plaintiff alleges that the Individual Defendants intentionally interfered with the contracts. The very same contracts which contain the forum selection clause. Thus, at issue in this case are the contracts. The very contracts that all parties agree contain a mandatory forum selection clause which state that "any action brought by either party against the other concerning the transactions contemplated by this Agreement shall be brought only in the state courts of New York or in the federal courts located in the state and county of Nassau." DE [72-2] at 12. The core of Plaintiff's claim revolves around the contracts. While bankruptcy has extinguished the actual monetary obligations created by the contracts, it did not absolve nor extinguish the Individual Defendants from all tort claims stemming from the contracts and alleged to have occurred prior to the bankruptcy. To be clear, the bankruptcy has extinguished all monetary obligations originating from the contracts on behalf of Alliance, not alleged tort claims deriving from the very same contracts on behalf of the Individuals Defendants.

Defendants cite to Fustok v. Conticommodity Servs., 618 F. Supp. 1082, 1089 (S.D.N.Y.), to argue that a choice of law provision does not apply to non-contractual causes of action. 618 F. Supp. 1082, 1089 (S.D.N.Y.). However, Defendants' citation is erroneous as Fustok does not stand for that proposition. What the Fustok court does say is that the plaintiff correctly pointed out, that "under New York's conflict of law rules a contractual choice of law provision 'does not bind [the parties] as to causes of action sounding in tort.'" Id. (quoting Klock v. Lehman Bros. Kuhn Loeb Inc., 584 F. Supp. 210, 215 (S.D.N.Y.1984) (citation omitted). The Fustok court clarified the principle and held that the clause at issue in each case must be

analyzed and that the circumstances of each case must be individually scrutinized, to properly conclude whether the clause binds the parties as to causes of action sounding in tort. Id.

With these principles in mind, Plaintiff has satisfied its burden in alleging that the forum selection clause at issue is valid and was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute. Martinez v. Bloomberg LP, 740 F. 3d at 217.  The clause clearly states that "any action brought by either party against the other concerning the transactions contemplated by this Agreement shall be brought only in the state courts of New York or in the federal courts located in the state and county of Nassau." DE [72-2] at 12. The claim in the instant case clearly falls within the purview of the clause as it concerns the transactions contemplated by the contracts. In reaching this conclusion the Court notes that public policy favors broadly interpreting forum selection clauses to include all claims that stem directly from the contractual relationship between the parties. See Direct Mail Prod. Servs. v. MBNA Corp., No. 99-cv-10550, 2000 WL 1277597 (S.D.N.Y. Sept. 7, 2000) (noting that "a forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if the 'gist' of those claims is a breach of that relationship)\\\\\\\\\\. Thus, the circuit courts have held that a contractually-based forum selection clause will also encompass tort claims if the tort claims ultimately depend on the existence of a contractual relationship between the parties, or if resolution of the claims relates to interpretation of the contract, or if the tort claims involve the same operative facts as a parallel claim for breach of contract" (internal citations and quotation marks omitted)).

Further, with respect to whether the Individual Defendants are subject to the forum selection clause, the answer is yes.

In this Circuit, a valid forum selection clause may be enforced against a non-signatory who is so closely-related to the actual signatories or the dispute that enforcement of the forum selection clause against it is reasonably foreseeable. See Magi XXI, Inc. v. Stato della Citta del Vaticano, 818 F. Supp. 2d 597, 605-06 (E.D.N.Y. 2011) (quoting In re Optimal U.S. Litig., No. 10-cv-4095, 2011 U.S. Dist. LEXIS 46745, at *40-*41 (S.D.N.Y. May 2, 2011)); see also LaRoss Partners, LLC v. Contact 911 Inc., 874 F. Supp. 2d 147, 160 (E.D.N.Y. 2012) (Spatt, *J.*) (collecting cases); Firefly Equities LLC v. Ultimate Combustion Co., 736 F. Supp. 2d 797, 799 (S.D.N.Y. 2010) (observing that "there can be no dispute that forum selection clauses will be enforced even against non-signatories where they meet the 'closely related' standard" (quoting In re Refco Sec. Litig., No. 07-mdl-1902, 2009 U.S. Dist. LEXIS 130683, at *40 (S.D.N.Y. Nov. 20, 2009) (Report and Recommendation), adopted, 2010 U.S. Dist. LEXIS 5832 (S.D.N.Y. Jan. 20, 2010))).

"'A non-party is 'closely related' to a dispute if its interests are 'completely derivative' of and 'directly related to, if not predicated upon' the signatory party's interests or conduct.'" Magi XXXI, 818 F. Supp. 2d. at 606 (quoting Cuno, Inc. v. Hawyward Indus. Prods., No. 03-cv-3076, 2005 U.S. Dist. LEXIS 8886, at *17 (S.D.N.Y. May 10, 2005)).

In some situations, a "close business relationship" between the signatories and a non-signatory may satisfy this test. See LaRoss, 874 F. Supp. at 160.... [W]here courts have found such a "close business relationship" to exist, the facts typically indicated that the parties' business operations were essentially "intertwined." *See* In re Refco, 2009 U.S. Dist. LEXIS 130683, at *40-*41; see also Bent v. Zounds Hearing Franchising, LLC, No. 15-cv-6555, 2016 U.S. Dist. LEXIS 3617, at *9-*10, 2016 WL 153092 (S.D.N.Y. Jan. 12, 2016) (observing that "[i]n most cases where a non-signatory has been found sufficiently 'closely related' to a signatory to a contract, such that a forum selection clause contained therein could be enforced against him, the non-signatory played an active role in the transaction or was a principal of the signatory company" (internal citations omitted)).

Power Up Lending Grp., Ltd. v. Murphy, 2016 WL 6088332, at *6-7 (E.D.N.Y. Oct. 18, 2016)

(quoting Am. Med. Distribs., Inc. v. Saturna Grp. Chartered Accountants, LLP, No. 15-cv-6532, 2016 WL 3920224, at *4-5 (E.D.N.Y. July 15, 2016)).

This case comes squarely within this rule. The Individual Defendants are indisputably "closely related" to the signatory corporation, so that it was or should have been reasonably foreseeable to them that the otherwise valid forum selection clause in the contracts

might be enforced against them. See, e.g., Midamines SPRL Ltd. v. KBC Bank NV, No. 12-cv-8089, 2014 WL 1116875 (S.D.N.Y. Mar. 18, 2014) (collecting cases for the proposition that "courts have enforced forum-selection clauses against non-signatory officers and directors of signatory corporations"), aff'd, 601 F. App'x 43 (2d Cir. 2015).

In the Court's view, these facts lead to the conclusion that the Defendants' business interests were and remain "completely derivative of and directly related to, if not predicated upon" those of their corporate employer, namely, Alliance. See Mazuma Holding Corp. v. Bethke, 1 F. Supp. 3d 6, 25 (E.D.N.Y. 2014) (noting that "[a]lthough 'the phrase 'closely related' is not particularly illuminating,' the foreseeability requirement 'implies that the non-signatory must have been otherwise involved *in the transaction* in some manner" (quoting Recurrent Capital Bridge Fund I, LLC v. ISR Sys. and Sensors, 875 F. Supp. 2d 297, 307-08 (S.D.N.Y. 2012))).

Under these circumstances, the Court discerns no rational basis for narrowly construing the scope of the forum selection clause so as to exclude the Individual Defendants. Therefore, the Court finds that the third element of the test for enforceability is satisfied and the forum selection clause is presumptively valid.

At the last step of this analysis, the burden now shifts to the Defendants to rebut the presumption of enforceability by making a sufficiently strong showing that requiring them to appear and defend this lawsuit in a New York forum would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching. In the Court's view, no such showing has been made.

In this regard, the Court reiterates that the Defendants, seemingly confident that the forum selection clause was not enforceable against them, failed in their legal memoranda to

follow the appropriate analytical framework. In particular, rather than directly addressing the

enforceability of the forum selection clause, they proceeded immediately to analyze the quality

of their personal and business contacts with this state in accordance with New York's long-arm

statute.

Assuming <u>arguendo</u> that the Defendants had undertaken such an analysis, there are only

four generally-accepted methods of rebutting the presumption that a forum selection clause is

enforceable, all of which are narrowly construed and are drawn from the 1972 Supreme Court

case <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 15, 92 S. Ct. 1907, 32 L. Ed. 2d 513

(1972):

> This presumption of validity may be overcome ... by a clear showing that the
> [forum selection] clauses are "'unreasonable' under the
> circumstances." <u>The Bremen</u>, 407 U.S. at 10. The Supreme Court has construed
> this exception narrowly: forum selection and choice of law
> clauses are "unreasonable: (1) if their incorporation into the agreement was the
> result of fraud or overreaching, 111 S. Ct. at 1528; 407 U.S. at 12-13; (2) if the
> complaining party "will for all practical purposes be deprived of his day in court,"
> due to the grave inconvenience or unfairness of the selected forum, 407 U.S. at
> 18; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff
> of a remedy, 111 S. Ct. at 1528; or (4) if the clauses contravene a strong public
> policy of the forum state, 407 U.S. at 15.

<u>Roby v. Corp. of Lloyd's</u>, 996 F.2d 1353, 1363 (2d Cir. 1993).

The Individual Defendants have failed to raise a compelling argument under any of these

factors. In fact, to the extent that the Individual Defendants contend – albeit in the context of a

due process analysis – that the extent of their business dealings with the Plaintiff fell short of

establishing a basis for personal jurisdiction, their argument is belied by the expansive scope of

the forum selection clause in the contracts. In particular, in addition to simply designating a

forum, the relevant clause in this case stipulates that Alliance agrees that a New York forum is

convenient to it; and Alliance willingly submits to the jurisdiction of this Court and waives any and all objections to jurisdiction or venue. See DE [72-2] at 12.

Under these circumstances, the Court finds that the presumption of enforceability has not been rebutted, and that the forum selection clause contained in the contracts is valid and binding as against the Individual Defendants. Therefore, it is respectfully recommended that the Individual Defendants' motions to dismiss the complaint based on lack of personal jurisdiction be denied.

Accordingly, the Court need not reach the broader question of whether exercising jurisdiction comports with the applicable long-arm statute and federal constitutional requirements of due process.

II.    Legal Principles: Standards Applicable on Motions to Dismiss

A.    Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (quoting, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Arista Records, LLC v. Doe 3, 604 F.3d 110, 119–20 (2d Cir. 2010). Facial plausibility is established by pleading sufficient factual content to allow a court to reasonably infer the defendant's liability. Twombly, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 555. Nor is a pleading that offers nothing more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," sufficient. Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 555).

With these standards in mind, the Court turns to assess the viability of Plaintiff's claims.

18

II.    Failure to State a Claim

    A.    Choice of Law

"Generally, [New York] courts will enforce a choice-of-law clause so long as the chosen law bears a reasonable relationship to the parties or the transaction." Welsbach Elec. Corp. v. MasTec N. Am., Inc., 7 N.Y.3d 624, 825 N.Y.S.2d 692, 859 N.E.2d 498, 500 (2006) (citation omitted). This is because "[a] basic precept of contract interpretation is that agreements should be construed to effectuate the parties' intent." Id. (citations omitted); see also IRB–Brasil Resseguros, S.A. v. Inepar Invs., S.A., 20 N.Y.3d 310, 958 N.Y.S.2d 689, 982 N.E.2d 609, 611 (2012) (emphasizing the goal of providing certainty and predictability to contracting parties in requiring enforcement of choice-of-law provision).

   "New York courts may refuse to enforce a choice-of-law clause only where (1) the parties' choice has no reasonable basis or (2) application of the chosen law would violate fundamental public policy of another jurisdiction with materially greater interests in the dispute." Beatie and Osborn LLP v. Patriot Scientific Corp., 431 F. Supp. 2d 367, 378 (S.D.N.Y. 2006) (citing Radioactive, J.V. v. Manson, 153 F. Supp. 2d 462, 469–70 (S.D.N.Y. 2001)); see also Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd., 230 F.3d 549, 556 (2d Cir.2000) ("New York law is clear in cases involving a contract with an express choice-of-law provision: Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction.").

    While noting that Florida may have had the most substantial contacts to the litigation, this Court, after thoroughly scrutinizing each element of the choice-of-law analysis, ultimately held that the parties' choice of law provision applying Virginia law is controlling. See DE [28]. Further, for the same reasons as discussed supra, this Court holds that the choice-of-law clause

contained in the contracts is valid and binding against the Individual Defendants and that they have not rebutted the presumption of enforceability. Therefore, this Court will apply Virginia law when reviewing whether a valid cause of action for intentional interference with contract has been stated.

B.    Intentional Interference With Contract

Virginia law recognizes a cause of action for tortious interference with a contract. The elements of this cause of action are: "'(i) the existence of a valid contractual relationship or business expectancy; (ii) knowledge of the relationship or expectancy on the part of the interferer; (iii) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (iv) resultant damage to the party whose relationship or expectancy has been disrupted.'" T.G. Slater & Son v. Donald P. & Patricia A. Brennan LLC, 385 F.3d 836, 844 (4th Cir. 2004) (quoting Chaves v. Johnson, 230 Va. 112, 335 S.E. 2d 97, 102 (Va. 1985)); see also Long v. Teradata Corp., No. 1:12cv787, 2012 U.S. Dist. LEXIS 128586, at *19-20 (E.D. Va. Sept. 10, 2012) (quoting Lewis-Gale Med. Ctr. v. Alldredge, 710 S.E. 2d 716, 720 (Va. 2011)).

The Complaint contains sufficient factual allegations to plausibly establish all of the elements of tortious interference with contract. From the facts alleged, the court can reasonably infer the existence of a valid contractual relationship between Power Up and Alliance. As the Individual Defendants took over control and management of Alliance, they had knowledge of these contractual relationships.

Plaintiff alleges that the Individual Defendants intentionally caused Alliance to breach its contractual agreements with Plaintiff for their own personal benefits as shareholders and to maintain a higher stock price value for their own holdings, to the detriment of both Alliance, who

would have been the beneficiary of a cancellation of the debt had the contracts not been breached but performed as agreed upon, and the detriment of Power-Up. Compl. ¶¶ 51-59. Plaintiff's allegation that this interference was done "intentionally and with malice aforethought" which the court must assume true at this juncture, is sufficient to demonstrate intentional interference. Compl. ¶ 52.

Finally, Plaintiff alleges that the Individual Defendants' conduct resulted in at least $265,000 in damages, which satisfies the damages element of the cause of action. Accordingly, at this juncture, Plaintiff has adequately pled a plausible intentional interference with contract cause of action. Thus, this Court recommends that the Individual Defendants' motion to dismiss the claim be denied.

III.   <u>Motion to Transfer</u>

A.   <u>Legal Standard</u>

The federal change-of-venue statute provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Generally, courts consider a number of factors in exercising their discretion to grant or deny a motion under Section 1404(a), including "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." <u>N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.</u>, 599 F.3d 102, 112 (2d Cir. 2010) (internal quotation marks omitted). "But 'the calculus changes when the parties' contract contains a valid forum-selection clause, which

represents the parties' agreement as to the most proper forum.'" GlaxoSmithKline LLC v. Laclede, Inc., No. 18-CV-4945 (JMF), 2019 WL 293329, at *4 (S.D.N.Y. Jan. 23, 2019) (quoting Atlantic Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex., 571 U.S. 49, 63 (2013)) (alterations and ellipsis omitted). "That is, a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." Id. (internal quotation marks omitted). That is true, however, only if "the claims and parties to the dispute are subject to the [forum-selection] clause." Fasano v. Yu Yu, 921 F.3d 333, 335 (2d Cir. 2019) (per curiam); accord Martinez v. Bloomberg LP, 740 F.3d 211, 217 (2d Cir. 2014). The party seeking transfer — here, the Individual Defendants — bears the burden of demonstrating that transfer is appropriate. See N.Y. Marine, 599 F.3d at 114.

B.      Application

1.      Forum Selection Clause

As the Court has already established and analyzed supra, the forum selection clause is valid and enforceable. Defendants have provided no argument that such exceptional circumstances exist in this case as to warrant transfer. In fact, Defendants' transfer argument is based solely on the traditional analysis. Assuming arguendo that the forum selection clause was not valid and enforceable, even undertaking the traditional analysis as outlined below, this Court would still find that transfer was inappropriate.

2.      Plaintiff's Choice of Forum

It is well settled that the plaintiff's choice of forum is "given great weight." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 107 (2d Cir. 2006). Thus, "[a] plaintiff's choice of venue is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." Royal Ins. Co. of Am. v. United States, 998 F. Supp. 351, 353 (S.D.N.Y.

1998). However, courts have noted that the weight given to this factor is diminished where the operative facts have "little or no connection" with the forum chosen by the plaintiff. Stein v. Microelectronic Packaging, Inc., No. 98–CV–8952 (MBM), 1999 WL 540443, at *8 (S.D.N.Y. July 26, 1999); see, e.g., Wagner v. N.Y. Marriott Marquis, 502 F. Supp. 2d 312, 317 (N.D.N.Y. 2007) ("The presumption favoring plaintiff's choice of forum, however, is not so rigidly applied where, as here, the cause of action arose outside of that forum...."); Royal Ins. Co. of Am., 998 F. Supp. at 353 ("The weight accorded to a plaintiff's choice of venue is significantly diminished, however where the operative facts have no connection to the chosen district."); Eskofot A/S v. E.I. Du Pont De Nemours & Co., 872 F. Supp. 81, 96 (S.D.N.Y. 1995) ("The deference accorded to plaintiff's choice of forum ... is diminished substantially where the forum is neither plaintiff's home district nor the place where the events or transactions underlying the action occurred."); Thomas Am. Corp. v. Fitzgerald, No. 94–CV–0262 (CBM), 1994 WL 440935, at *5 (S.D.N.Y. Aug. 11, 1994) (same); Hernandez v. Graebel Van Lines, Inc., 761 F. Supp. 983, 990 (E.D.N.Y. 1991) ("[W]here the transactions or facts giving rise to the action have no material relation or significant connection to the plaintiff's chosen forum, then the plaintiff's choice is not accorded the same 'great weight' and in fact is given reduced significance."). "Moreover, where it appears that the plaintiff was forum shopping and that the selected forum has little or no connection with the parties or the subject matter, plaintiff's choice of forum is entitled to no weight whatever, and transfer of venue is appropriate." Pierce v. Coughlin, 806 F. Supp. 426, 429 (S.D.N.Y. 1992) (internal quotation marks and citation omitted).

Here, Plaintiff has its principal place of business in Nassau County, New York. See Compl. ¶ 8. As there is no evidence of forum shopping, the Court concludes that Plaintiff's choice of forum is entitled to great weight.

3.      Convenience of Witnesses

In deciding whether to disturb the plaintiff's choice of forum, the convenience of the witnesses is generally the most important factor in the transfer analysis. See, e.g., DLJ Mortg. Capital, Inc. v. Cameron Fin. Grp., Inc., No. 07–CV–3746 (LAP), 2007 WL 4325893, at *5 (S.D.N.Y. Dec. 4, 2007) (noting that "the convenience of witnesses is typically the most important factor in a motion pursuant to § 1404(a)"); accord Wagner, 502 F. Supp. 2d at 315 ("[T]he convenience of both party and nonparty witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." (internal quotation marks and citation omitted)); Neil Bros. Ltd. v. World Wide Lines, Inc., 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006) ("The convenience of the witnesses is probably the single most important factor in the transfer analysis."); Viacom Int' l,, Inc. v. Melvin Simon Prods., Inc., 774 F. Supp. 858, 868 (S.D.N.Y. 1991) ("The core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses. Courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district." (citations omitted)).

"Generally, the moving party submits an affidavit explaining why the transferee forum is more convenient, which includes 'the potential principal witnesses expected to be called and the substance of their testimony.'" EasyWeb Innovations, LLC v. Facebook, 888 F. Supp. 2d 342, 350 (E.D.N.Y. 2012) (quoting Pall Corp. v. PTI Techs., Inc., 992 F. Supp. 196, 198 (E.D.N.Y. 1998)). Defendants have not done so here. Because the Court cannot determine how many witnesses each side intends to call, where they are located, or the materiality of each witness's testimony, this factor is ultimately neutral. See, e.g., Easy Web Innovations, 888 F. Supp. 2d at 352. Such "[v]ague generalizations and failure to clearly specify the key witnesses to be called,

along with a statement concerning the nature of their testimony, are an insufficient basis upon which to grant a change of venue under § 1404(a)." Orb Factory, Ltd. v. Design Sci. Toys, Ltd., 6 F. Supp. 2d 203, 208–09 (S.D.N.Y. 1998).

###### 4.   Locus of Operative Facts

"The location of the operative facts is traditionally an important factor to be considered in deciding where a case should be tried." 800–Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 134 (S.D.N.Y. 1994). To ascertain the locus of operative facts, "courts look to 'the site of the events from which the claim arises.'" Mohsen v. Morgan Stanley & Co. Inc., No. 11–CV–6751 (PGG), 2013 WL 5312525, at *6 (S.D.N.Y. Sept. 23, 2013) (quoting Age Grp. Ltd. v. Regal Logistics, Corp., No. 06–CV–4328 (PKL), 2007 WL 2274024, at * 3 (S.D.N.Y. Aug. 8, 2007)).

This factor tips in favor of transfer here. Specifically, the Individual Defendants' alleged interference with the contracts took place in Florida. Thus, as between New York and Florida, the locus of operative facts occurred in Florida. See, e.g., Fteja v. Facebook, Inc., 841 F. Supp. 2d 829, 842 (S.D.N.Y. 2012) (holding that the locus of operative facts "appears to be California" where the breach was "carried out" in California by Facebook employees); Finally, although Plaintiff may claim that it was harmed in New York that fact is not especially relevant in determining the locus of operative facts. See, e.g., Berger v. Cushman & Wakefield of Pa., Inc., No. 12–CV–9224 (JPO), 2013 WL 4565256, at * 10 (S.D.N.Y. Aug. 28, 2013) (rejecting plaintiffs' argument that locus of operative facts was New York because plaintiffs' "injuries have a direct connection to New York," and holding that locus of operative facts was where fraud was planned and executed).

###### 5.   Availability of Process

Rule 45 of the Federal Rules of Civil Procedure prohibits a subpoena from directing a witness to travel more than 100 miles. See Fed. R. Civ. P. 45. There is no indication that any non-party witnesses would refuse to appear and, thus, this factor is neutral.

### 6.    Relative Means of the Parties

"Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." 800–Flowers, 860 F. Supp. at 135; see also Dwyer v. Gen. Motors Corp., 853 F. Supp. 690, 693–94 (S.D.N.Y.1 994) (denying transfer where "[p]laintiffs are individuals who are suing a large corporation which possesses considerably greater financial assets"). In this case, Defendants do not argue for this factor and Plaintiff argues that the party's relative means are relatively equal. Therefore, the Court determines it be neutral.

### 7.    Trial Efficiency and Interests of Justice

Finally, the Court considers whether the interests of justice and efficiency favor transfer of this case to the Southern District of Florida. In particular, the Court examines this factor in light of the extensive pre-trial litigation that has already occurred in this matter as well as this Court's familiarity with the case and the weight given to Plaintiff's choice of forum. Therefore, this factor tips in favor of denying transfer to Florida.

Weighing the factors, there is relatively little basis to support transfer, while there is a strong presumption in favor of maintaining Plaintiff's choice of venue. The convenience of witnesses, parties, and relative means of the parties are neutral factors. Plaintiff's principle place of business is located in New York, the forum selection clause selected New York and the New York Court is extremely familiar with this matter due to the extensive pre-trial litigation in this

case. On balance, because the factors do not weigh strongly in favor of transfer, and if anything, weigh against transfer, the Court respectfully recommends denying the motion to transfer venue.

IV.   <u>Leave to Amend</u>

Defendants seek leave to amend their pleadings to add affirmative defenses and address dismissed causes of action. Plaintiff's brief does not address Defendants' request.

Under Rule 15(a)(2), the Court should "freely give" leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Applying Rule 15, "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith. A litigant may be prejudiced within the meaning of the rule if the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." <u>Pasternack v. Shrader</u>, 863 F.3d 162, 174 (2d Cir. 2017) (internal quotations marks and citations omitted). Leave to amend may also be denied based on the futility of the proposed amendment. <u>Chunn v. Amtrak</u>, 916 F.3d 204, 208 (2d Cir. 2019) (citation omitted).

As Defendants' request to amend their pleadings is unopposed, this Court respectfully recommends that the Individual Defendants be granted leave to amend their pleadings.

<u>CONCLUSION</u>

For the foregoing reasons, this Court respectfully recommends that the Individual Defendants' motion to dismiss and motion to transfer venue, appearing as Docket Entry No. 72 herein, be denied, but that the Individual Defendants be granted leave to amend their previously filed Answers and Affirmative Defenses.

OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF.  Any

written objections to this Report and Recommendation must be filed with the Clerk of the Court

within fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a),

72(b).  Any requests for an extension of time for filing objections must be directed to the District

Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing

objections.  Failure to file objections within fourteen (14) days will preclude further review of

this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn,

474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive

right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to

object timely to a magistrate's report operates as a waiver of any further judicial review of the

magistrate's decision").


Dated: Central Islip, New York
       August 17, 2021

                                                    /s/ Anne Y. Shields
                                                    Anne Y. Shields
                                                    United States Magistrate Judge